THE DIOCESE OF WESTERN NORTH CAROLINA of the PROTESTANT
  EPISCOPAL CHURCH; Asheville Chapter of the UNITED DAUGH-
  TERS OF THE CONFEDERACY; TRINITY PROTESTANT EPISCO-
  PAL CHURCH of Asheville, N. C.; ANNIE JUSTICE GREENE; THE
  RIGHT REVEREND M. GEORGE HENRY, Bishop of the Diocese of
  Western North Carolina of the PROTESTANT EPISCOPAL CHURCH
  and the REVEREND JOHN W. TUTON, Rector of TRINITY PROTES-
  TANT EPISCOPAL CHURCH of Asheville, N. C. v. FRED L. SALE
  and T. CLAYTON PEGRAM, Co-Executors Under the Will of JULIA
  BETHEL ROBERTS CLAYTON, Deceased; T. CLAYTON PEGRAM,
  Individually; and BETTY PEGRAM SESSOMS.

(Filed 1 March, 1961.)

**1. Bill of Discovery § 5—**

　　G.S. 8-89 which gives Superior Court judges discretionary power to order
parties to produce for inspection and copying, books, records and docu-
ments relating to the merits of an action pending in the Superior Court,
is remedial and should be liberally construed.

**2. Same—**

　　In an action to compel an executor to account for certain stock of
the estate which plaintiffs alleged he had purchased before the death of
testatrix with her money under a power of attorney, the executor con-
tended that he purchased the stock with funds of the executrix and
with his own funds and that the stock was issued to them as joint ten-
ants with right of survivorship under a valid contract between them-
selves. *Held:* The court has the discretionary power to order the executor
to exhibit to plaintiffs or their counsel all paper writings relied upon
by him as a basis of the asserted contract.

APPEAL by defendants from *Clarkson, J.,* September, 1960 Term,
BUNCOMBE Superior Court.

This is a civil action instituted by legatees under the Will of Julia
Bethel Roberts Clayton against the defendants, Fred L. Sale and T.
Clayton Pegram, executors, T. Clayton Pegram, Individually and
Betty Pegram Sessoms, legatee. In addition to the averments with
respect to the probate of the will, qualification of executors, etc.,
plaintiffs, in short summary, allege: (1) More than four years prior
to her death the testatrix executed a power of attorney to the de-
fendant T. Clayton Pegram under which he purchased for the testa-
trix, with her funds, 200 shares of stock in the R. J. Reynolds Tobacco
Company. Subsequently one hundred per cent stock dividend was
issued and at the death of the testatrix the 400 shares of stock con-
stituted a part of the assets of her estate. (2) That the executors
have failed to list the stock as an asset of the estate or to account
for it. (3) The plaintiffs and the defendant Betty Pegram Sessoms
are special legatees and the United Daughters of the Confederacy and

the Diocese of Western North Carolina of the Protestant Episcopal Church are residuary legatees under the will. (4) Unless the Reynolds stock is accounted for, certainly the residuary legatees, and perhaps some of the special legatees will be defeated for lack of sufficient assets.

The complaint contains other allegations not now pertinent to the question before us. For relief the plaintiffs ask that the executors be required to account for the Reynolds stock, including the dividends.

The defendant Pegram answered and, among other things, admitted the execution and registration of a paper writing referred to as the power of attorney executed by the testatrix to the defendant; that defendant and testatrix jointly purchased the Reynolds stock and had it issued to "Mrs. Julia Bethel Clayton and T. Clayton Pegram as joint tenants, with right of survivorship and not as tenants in common." That the stock was purchased "with funds belonging to Julia Bethel Clayton and this answering defendant and was held as joint tenants . . . under a valid contract entered into between the deceased and this answering defendant, for valuable considerations."

The defendant Pegram further answered, "that the said 200 shares of dividend stock was impressed with the contract and agreement that upon the death of Mrs. J. Bethel Clayton, T. Clayton Pegram, as the surviving joint tenant, would be vested with all interest and title therein."

The defendant admitted his refusal to account for the stock, claiming it as his own. Upon motion supported by affidavit, the court ordered the defendant T. Clayton Pegram to exhibit to the plaintiffs or counsel all paper writings relied upon by him, either as an individual or an executor, in support of his claim to ownership of the Reynolds stock, and to permit copies. From this order, the defendant appealed.

*Lee and Allen, for plaintiffs, appellees.*
*George W. Craig and E. L. Loftin, for defendant T. Clayton Pegram, Co-Executor and Individually, appellant.*

HIGGINS, J. The pleadings are sufficient to permit these inferences: (1) More than four years before her death the testatrix executed a power of attorney authorizing T. Clayton Pegram to act for her in certain business transactions. (2) Pegram purchased Reynolds stock which the plaintiffs allege was paid for entirely from funds of testatrix, and which the defendant alleges was paid for in part by the testatrix and in part by himself; that the stock was issued to both as joint tenants with right of survivorship. (3) The plaintiffs claim the stock should be accounted for as an asset of the estate. The defendant claims

he is the sole owner "under a valid contract entered into between the deceased and this answering defendant, for valuable considerations."

Upon the plaintiffs' request, Judge Clarkson ordered the defendant Pegram to permit inspection and copying of the books, papers and documents relied on by the defendant as showing title to the stock. The order was made pursuant to G.S. 8-89 which gives superior court judges, in their discretion, the power to order parties to produce for inspection and copying, books, records and documents relating to the merits of an action pending in the superior court. The section is remedial and should be liberally construed. *Abbitt v. Gregory,* 196 N.C. 9, 144 S.E. 297.

Here, the attorney in fact purchased stocks, according to his own admission, in part from his principal's funds. Later, as executor of the principal's estate, he refused to account for the stock, claiming he owns it "under a valid contract entered into between the deceased and this answering defendant, for valuable considerations." Having occupied the relationship of attorney in fact at the time he purchased the stock, and now occupying the position of executor, he complains that the superior court committed prejudicial error in ordering him to show the contract under which he claims the stock. Trust relationships are involved. The trustee who seeks to benefit should be willing to disclose his authority to do so. The purpose of the statute is to enable superior court judges to do exactly what Judge Clarkson did in this case. His order is

Affirmed.